**E-filed 10/16/08**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| JOE PALAZZOLO,<br><br>                         Plaintiff,<br><br>        v.<br><br>GORDON SONNE, et al.,<br><br>                         Defendants. | Case Number C 03-2901 JF (PVT)<br><br>ORDER[1] GRANTING MONTEREY<br>COUNTY DEFENDANTS' MOTION<br>FOR SUMMARY JUDGMENT<br><br>[re: docket no. 128] |

Defendants Gordon Sonne ("Sonne"), the County of Monterey, the Monterey County Sheriff's Department, Robert J. Perez ("Perez"), Chuck Monarque ("Monarque"), and Terry Pfau ("Pfau") (collectively "Monterey County Defendants") move for summary judgment. The Court has considered the briefing submitted by the parties as well as the oral arguments of counsel presented at the hearing on August 22, 2008. For the reasons discussed below, the motion will be granted.

## I. BACKGROUND

The following facts are undisputed: Plaintiff Joe Palazzolo ("Palazzolo") has worked as a Sheriff's deputy for the County of Monterey since 1995. In 2001, Palazzolo often stopped at the

---

[1] This disposition is not designated for publication in the official reports.

1  Sand City Police Station to take rest breaks and work on reports.  On August 30, 2001, Sand City

2  Police Chief Michael Klein ("Klein") told Monterey County Sheriff Gordon Sonne ("Sonne")

3  that Palazzolo had been stealing supplies from the Sand City Police Station, and in particular that

4  Palazzolo had taken some camera film.  Sonne placed Palazzolo on administrative leave with pay

5  and ordered an internal affairs investigation into Klein's allegations.  On November 6, 2001, the

6  Monterey County Sheriff's Department issued a Notice of Intent to Take Punitive Action against

7  Palazzolo, recommending that he be suspended for a period of 300 work hours without pay and

8  that he be ordered to make restitution of property misappropriated from the Sand City Police

9  Department.  On November 29, 2001, Sheriff Sonne conducted a *Skelly* hearing.  On December

10  17, 2001, Sonne issued a Notice of Punitive Action suspending Palazzolo for 300 work hours

11  without pay.  Palazzolo appealed this result.  On July 12, 2002, the hearing office issued a

12  decision recommending that the suspension be set aside and that Palazzolo be made whole with

13  respect to back pay and benefits.  The Monterey County Board of Supervisors adopted the

14  hearing officer's decision, and ordered the County to restore Palazzolo's pay and benefits, but it

15  also concluded that a written letter of warning was appropriate. A letter subsequently was placed

16  in Palazzolo's file.

17       Palazzolo's single remaining claim, asserted pursuant to 42 U.S.C. § 1983, alleges

18  deprivation of liberty and property without due process of law in violation of the Fifth and

19  Fourteenth Amendments.  Specifically, Palazzolo alleges that Klein had a personal vendetta

20  against him because, approximately seven years prior to the events giving rise to the instant

21  action, Palazzolo's daughter (also a Sheriff's deputy) called the California Highway Patrol to

22  initiate an investigation as to whether Klein had been driving under the influence of alcohol;

23  Klein subsequently was arrested, prosecuted and convicted of driving under the influence.

24  Palazzolo claims that Klein, Sonne and other individuals conspired in this vendetta, with the

25  result that Palazzolo was denied both procedural and substantive due process in his disciplinary

26  proceedings.

### II. LEGAL STANDARD

28       A motion for summary judgment should be granted if there is no genuine issue of

2

1   material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P.

2   56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party bears

3   the initial burden of informing the Court of the basis for the motion and identifying the portions

4   of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that

5   demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S.

6   317, 323 (1986).

7        If the moving party meets this initial burden, the burden shifts to the non-moving party to

8   present specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e);

9   *Celotex*, 477 U.S. at 324.  A genuine issue for trial exists if the non-moving party presents

10  evidence from which a reasonable jury, viewing the evidence in the light most favorable to that

11  party, could resolve the material issue in his or her favor.  *Anderson*, 477 U.S. 242, 248-49;

12  *Barlow v. Ground*, 943 F. 2d 1132, 1134-36 (9th Cir. 1991).

### III. DISCUSSION

14       In order to prevail on a claim for deprivation of a liberty or property interest under

15  § 1983, a plaintiff must establish "(1) a liberty or property interest protected by the Constitution;

16  (2) a deprivation of the interest by the government; [and] (3) lack of [due] process." *Portman v.*

17  *County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993).

18       With respect to the first element, the United States Supreme Court has recognized that a

19  public employee has a property interest in continued government employment and benefits.

20  *Connell v. Higgenbotham*, 403 U.S. 207, 208 (1971) (holding that the law prohibits "summary

21  dismissal from public employment without hearing or inquiry required by due process").  The

22  Supreme Court likewise has recognized a public employee's liberty interest in his reputation.

23  *Paul v. Davis*, 424 U.S. 693, 708 (1976) ("Where a person's good name, reputation, honor, or

24  integrity is at stake [b]ecause of what the government is doing to him, notice and an opportunity

25  to be heard are essential.").  However, a plaintiff may not assert a reputation claim "standing

26  alone and apart from any other governmental action with respect to him." *Id*. at 694; *see also*

27  *Albright v. Oliver*, 510 U.S. 266, 296 n.9 (1994).  In other words, defamation by a government

28  official cannot support a claim for deprivation of a liberty interest unless there is some other

3

1    cognizable deprivation.  The only other deprivation alleged here is deprivation of a property

2    interest.  Accordingly, if Palazzolo's property interest claim fails, so too does his liberty interest

3    claim.

4         Turning to the second element, Palazzolo contends that his temporary disciplinary

5    suspension and the subsequent placement of a warning letter in his file constituted actionable

6    deprivations of his property interest in continued employment and benefits.  It is unclear whether

7    discipline short of termination ever may be sufficient to constitute a deprivation of property

8    interest.  *See Gilbert v. Homar*, 520 U.S. 924, 929 (1997) (declining to decide the issue).  The

9    Ninth Circuit has held that a disciplinary transfer of a public employee from one position to

10   another does not constitute a deprivation of property interest sufficient to trigger due process,

11   noting that "[n]early all reported decisions dealing with section 1983 in the context of

12   disciplinary proceedings against public employees arise out of *discharges* from public

13   employment, and not mere disciplinary actions."  *Stiesberg v. State of California*, 80 F.3d 353,

14   356 (9th Cir. 1996).  Even assuming that suspension without pay is sufficient to trigger due

15   process protections, such suspension does not constitute a deprivation of property when a post-

16   suspension hearing results in reinstatement with back pay and benefits.  *See Workman v. Jordan*,

17   32 F.2d 475, 479 (10th Cir. 1994) (holding that "[b]ecause a procedurally adequate

18   posttermination hearing actually resulted in [the employee's] reinstatement, together with back

19   pay for the temporary deprivation of his employment, he cannot now state claim under § 1983 for

20   loss of a constitutionally protected property interest in employment.").  Palazzolo has not cited,

21   and this Court has not discovered, any decision holding that the placement of a warning letter in

22   an employee's file constitutes a deprivation of property interest sufficient to trigger due process

23   protections.  Accordingly, the Court concludes that Palazzolo has failed to demonstrate an

24   actionable deprivation of a property interest.

25        Finally, with respect to the third element, the Court concludes that Defendants have

26   established that any deprivation was imposed *with* due process of law, and that Palazzolo has

27   failed to raise a triable issue of material fact as to this point.  Palazzolo appears to be claiming

28   denial of both procedural and substantive due process.  With respect to the former, a public

1    employee is not entitled to a full evidentiary hearing prior to adverse administrative action, but

2    must be afforded "oral or written notice of the charges against him, an explanation of the

3    employer's evidence, and an opportunity to present his side of the story." *Cleveland Bd. of Educ.*

4    *v. Loudermill*, 470 U.S. 532, 546 (1985).  Such pretermination opportunity to respond, coupled

5    with adequate post-action administrative procedures, satisfies the requirements of due process.

6    *Id.* at 547-48.  Here, the Memorandum of Understanding ("MOU") between the Deputy Sheriff's

7    Association and the County of Monterey set forth in detail the required procedures for

8    disciplining a Sheriff's deputy.  Rentz Decl. Exh. A.  The MOU authorizes the Sheriff to take

9    disciplinary action in appropriate cases.  MOU ¶ 12.1.  The Sheriff is required to give five days

10   notice of a proposed suspension of more than five days without pay.  MOU ¶ 12.2.  The notice

11   must state the nature of the disciplinary action, the effective date of the action, provide the causes

12   of the action, identify the evidence supporting the action, and advise the employee of his or her

13   right to respond prior to the effective date of the action.  *Id*.  The right to respond is required by

14   *Skelly v. State Personnel Board*, 15 Cal.3d 194 (1975), and the informal hearing at which the

15   employee is permitted to respond is referred to as a *Skelly* hearing.  If disciplinary action is to be

16   imposed after the *Skelly* hearing, the employee must be given notice as soon as possible; such

17   notice must advise the employee of his or her right to appeal the disciplinary action.  MOU ¶

18   12.2.  The MOU sets forth the procedure for filing an appeal with the Clerk to the Board of

19   Supervisors, explains that the Board will appoint a hearing officer, sets forth the deadline for the

20   appellate hearing, and explains the evidentiary rules governing the hearing.  MOU ¶ 12.13.

21   Following the hearing, the hearing officer must prepare and submit a summary record of the

22   proceedings and a recommended decision to the Board of Supervisors, which then has thirty days

23   to adopt or reject such findings.  *Id*.

24          There is no dispute that all of these procedures were followed and that the procedures on

25   their face meet the requirements of procedural due process.  However, Palazzolo asserts that

26   Sonne and other Sheriff's employees were biased against him and thus that the administrative

27   proceedings were unfair and inadequate.  "A biased proceeding is not a procedurally adequate

28   one. At a minimum, Due Process requires a hearing before an impartial tribunal."  *Clements v.*

5

1    *Airport Authority of Washoe County*, 69 F.3d 321, 333 (9th Cir. 1995).

2         Palazzolo fails to point to any evidence from which a reasonable trier of fact could

3    conclude that Sonne and the other employees involved in the administrative disciplinary

4    proceedings were biased.  In his deposition, Palazzolo stated that he believed that Sonne and

5    other Sheriff's employees knew that Klein had a vendetta against him arising from a 1994

6    incident in which Palazzolo's daughter was involved in Klein's arrest for driving under the

7    influence.  Palazzolo's theory is that Sonne and his employees conspired with Klein in this

8    vendetta, and that the vendetta was the motivating factor behind the accusations, investigation

9    and ultimate disciplinary action.  However, when asked if he had any reason to believe that

10   Sonne even knew about the alleged vendetta – which predated the events giving rise to the

11   instant lawsuit by approximately seven years – Palazzolo admitted that:  "I don't know that.  I'm

12   making an assumption based on the end result."  Palazzolo Depo. 218:16-17.  Palazzolo further

13   admitted that no one ever told him that Sonne or any of the other individual defendants were

14   involved in Klein's alleged vendetta against him.  *Id*. at 22:1-12.  Palazzolo formed a subjective

15   belief that they must have been involved because of the manner in which the disciplinary hearing

16   was conducted.  *Id*. at 220:18 - 221:5.  Specifically, Palazzolo asserts that Klein and the Sheriff's

17   Department were "wrong" on the dates and times they presented.  *Id*.  Palazzolo's subjective

18   belief that Sonne and other Sheriff's employees "must have" conspired in Klein's alleged

19   vendetta against him simply is insufficient to raise a triable issue of material fact as to the

20   adequacy of the procedural due process afforded him.

21        Turning to substantive due process, that guarantee protects against the arbitrary and

22   oppressive exercise of government power.  *County of Sacramento v. Lewis*, 523 U.S. 833, 846

23   (1997).  "[O]nly the most egregious official conduct can be said to be "arbitrary in the

24   constitutional sense."  *Id*.  Palazzolo's substantive due process claim rests upon the same

25   assumption as does his procedural due process claim – that Sonne and the other individual

26   defendants were in on Klein's alleged vendetta and instituted the investigation and disciplinary

27   proceedings arbitrarily and without sufficient justification.  As noted above, Palazzolo has failed

28   to introduce any evidence from which a reasonable trier of fact could conclude that Sonne and his

6

1    employees even knew that Palazzolo's daughter was involved in Klein's arrest in 1994, much

2    less that they were involved in Klein's alleged resulting vendetta against Palazzolo seven years

3    later.                                          **IV. ORDER**

4             The Monterey County Defendants' motion for summary judgment is GRANTED.  All

5    claims against all defendants having been adjudicated, the Clerk of the Court shall enter

6    judgment and close the file.

7

8

9

10   DATED:  10/16/08

11                                        _____

12                                        JEREMY FOGEL
                                          United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

7

1   Copies of this order were served on the following persons:

2

3   Douglas Frank Young dyoung@hurleylaw.com, gforese@hurleylaw.com

4   Frank G. Tiesen tiesenf@co.monterey.ca.us, ontiveross@co.monterey.ca.us

5   Gasper R Garcia , II perspone@hotmail.com

6   Susan K. Blitch sblitch@hurleylaw.com

7   Traci A. Kirkbride kirkbrideta@co.monterey.ca.us, zazuetac@co.monterey.ca.us

8   Vincent P. Hurley vhurley@hurleylaw.com, gforese@hurleylaw.com

9   William K. Rentz rentzb@co.monterey.ca.us, zazuetac@co.monterey.ca.us

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. C 03-2901 JF (PVT)
ORDER GRANTING MONTEREY COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
(JFLC2)